IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.                                                    CASE NO. 1:17-cr-7-MW-GRJ

BELINDA SHEPPARD-LEWIS,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Belinda Sheppard-Lewis's

Motion to Withdraw Guilty Plea Pursuant to Federal Rules of Criminal

Procedure, Rule 11(d)(2)(B).  ECF No. 88.  The government filed a

response to the motion to withdraw guilty plea. ECF No. 93. After

continuing the matter several times, at the Defendant's request, the Court

conducted an evidentiary hearing on April 3, 2019. After the conclusion of

the hearing the Court orally explained its reasons for denying Defendant's

motion and advised that the Court's ruling would be further explained in a

report and recommendation. Accordingly, for the reasons explained below,

the Court respectfully recommends that Defendant's Motion to Withdraw

Guilty Plea be denied.

## INTRODUCTION

Defendant requests permission to withdraw her September 5, 2018, guilty plea to counts one through four of the superseding indictment charging her with providing false tax returns in violation of 26 U.S.C. § 7206(1), count five, charging her with wire fraud in violation of 18 U.S.C. § 1343 and count six, charging her with aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1).

Because the motion was not filed in a vacuum the circumstances and timing surrounding the motion provide appropriate context.

This criminal case has been pending since March 2017, when the grand jury returned the indictment in this case. Defendant first appeared before the Court on April 11, 2017. The Court appointed the Federal Public Defender to represent the Defendant. The case was continued at Defendants' request no less than five times. One week before the trial was scheduled to begin on January 29, 2018, Defendant retained Stephen Bernstein as counsel to represent her. The case was then continued seven more times at the Defendant's request. Finally, after twelve continuances of the trial, the Defendant notified the Court that she wanted to plead guilty. Accordingly, a change of plea hearing was scheduled and conducted on September 4, 2018, before the assigned magistrate judge, upon referral

from the district judge. The Defendant entered a straight-up plea to all charges after the Court conducted an extensive plea colloquy, as required by Rule 11 of the Federal Rules of Criminal Procedure.

Although the plea was straight-up, there was one agreement between the government and the Defendant, which was explained in detail at the change of plea hearing. The government agreed to postpone the sentencing in this case until after the Eleventh Circuit issued its ruling in *United States v Munksgard,* an appeal from a judgment and conviction from this district, which concerned among many issues, a challenge to the scope of the definition of the word "use" under the Aggravated Identity Theft statute. The parties agreed that sentencing would be scheduled after the Eleventh Circuit decided *Munksgard*.

The final presentence investigation report was prepared and completed so that sentencing was scheduled for November 26, 2018. Because *Munksgard* was still pending sentencing was continued and rescheduled for February 25, 2019. The Eleventh Circuit issued its opinion in *Munksgard* on January 30, 2019. Notably, shortly after *Munsgard* was decided and on the date of the sentencing Defendant filed the Motion to Withdraw Guilty Plea.

## DISCUSSION

Resolution of Defendant's Motion to Withdraw Guilty Plea is not close. Here's why.

The Defendant argues in her motion that "[a]s a result of a meeting on August 25, 2018, at her counsel's office, she believed that she would have an opportunity to withdraw her plea until the date of sentencing."[1] Although Defendant testified at the evidentiary hearing she did not provide any details in her testimony regarding the August 25, 2018 meeting at her attorney's office. Instead, at the evidentiary hearing the Defendant argued that she should be granted permission to withdraw her guilty plea because when she entered the plea it was not made knowingly and voluntarily.

In support of this argument Defendant testified that: (1) her attorney Stephen Bernstein told her to simply say "yes" to every question the judge asked, and (2) although she was provided with a statement of facts that she signed she did not read it before signing it. Defendant also suggests that she thought she could withdraw her plea in the event the *Munksgard* case did not provide her assistance with the Aggravated Identify Theft charge in Count VI of the superseding indictment. None of Defendant's arguments are supported by the evidence presented at the evidentiary

---

[1] ECF No. 88, p. 3, ¶ 4.

hearing and each of the arguments is refuted by the transcript of Defendant's sworn testimony at the September 4, 2018, change of plea hearing.

Even though the evidentiary hearing was continued so that Defendant could obtain testimony of family members, the only evidence Defendant presented at the evidentiary hearing was her own testimony. Defendants' testimony at the evidentiary hearing can be described charitably as unconvincing and completely lacking any credibility. Even more troubling than the lack of credibility is that the Defendant testified under oath that she lied to the Court during the change of plea hearing, even though she knew full well that she was under oath and was subject to penalty of perjury.

Incredibly during direct-examination the Defendant testified that she did not read the plea agreement and that she was untruthful when the Court asked her at the evidentiary hearing whether she had read every word of the plea agreement. The glaring problem with Defendant's testimony is that there was no plea agreement in this case because the plea was entered "straight-up" and therefore the Court never asked Defendant at the change of plea hearing whether she had read and understood the plea agreement.

On redirect examination, and apparently realizing that her testimony on direct examination in this issue was pure fiction, the Defendant attempted to back-track and explain that she did not read the "statement of facts" (which she presumably thought was the plea agreement) even though she signed the document.

Defendant also testified that she lied to the Court during the change of plea hearing because her retained counsel, Stephen Bernstein, told her to answer "yes" to all of the Court's questions. According to Defendant, she believed she could withdraw her guilty plea at any time prior to sentencing, apparently without reason or any justification. While Defendant never testified that her attorney told her she could withdraw her guilty plea at any time she nonetheless testified that she was under the impression that she could do so.

The government presented the testimony of Stephen Bernstein. The Defendant conceded that she had waived any attorney-client privilege regaridng the discussions she had with her attorney relevant to her motion to withdraw guilty plea.

Mr. Bernstein testified that he met with the Defendant on multiple occasions to discuss the case and the evidence. He also reviewed the approximate four boxes of documentary evidence seized from Defendant

by the government when the government executed a search warrant on Defendant's premises. Mr. Bernstein met extensively with the IRS case agent, who reviewed the government's evidence with Mr. Bernstein. Notably, Mr. Bernstein highlighted that in addition to the government's documentary evidence, the Defendant prior to indictment was interviewed by the IRS agent, and according to Mr. Bernstein, the Defendant provided a number of admissions to the IRS agent, which further supported the government's case.

Regarding Defendant's review of the statement of facts, Mr. Bernstein testified that he provided the document to Defendant and discussed it with her on more than one occasion. According to Mr. Bernstein, the Defendant appeared to read it before she signed it but Mr. Bernstein could not say definitively whether the Defendant actually read the document or simply said she had done so. Notably, Mr. Bernstein testified that he never told the Defendant to lie during the change of plea hearing and never told the Defendant to say "yes" to the Court's questions even if the answers were not true.

The law applicable to Defendant's motion is straightforward and not in dispute. Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides in relevant part:

(d)    Withdrawing a Guilty Plea or Nolo Contendere Plea. A defendant may withdraw a plea of guilty or nolo contendere:

*    *    *    *    *

(2)    after the court accepts the plea, but before it imposes sentence if:

*    *    *    *    *

(B)    the defendant can show a fair and just reason for requesting the withdrawal.

When deciding whether to grant a motion to withdraw a guilty plea, "the district court may consider the totality of the circumstances surrounding the plea … include[ing] (1) whether close assistance of counsel was available, (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *United States v Buckles,* 843 F. 2d 469, 471-72 (11th Cir. 1988)( internal citations omitted).  However, the district court is not required to find prejudice to the government. *Id.* at 474.  Further, where, as here, the defendant does not satisfy the first two factors of the *Buckles* analysis, the court is not required to "give particular attention" to the remaining factors. *United States v. Bandzul,* 652 Fed. Appx. 860, 861 (11th Cir. 2016)(*citing United States v Gonzalez-Mercado,* 808 F. 2d 796, 801 (11th Cir. 1987))

A defendant does not have an absolute right to withdraw a guilty plea. The decision to allow withdrawal is "left to the sound discretion of the trial

court." *Id.* at 471. Because there is no absolute right to withdraw a guilty plea the defendant bears the burden to show that the plea should be withdrawn. *Id.* at 472.

The timing of the motion to withdraw also should be taken into account. *United States v. Gonzalez-Mercado,* at 801("The timing of the appellant's motion to withdraw also deserves our consideration.") And "[t]he longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal." *United States v Pedro-Hernandez,* 490 Fed. Appx. 275, 277 (11th Cir. 2012(*citing Buckles* at 473.)

Defendant has fallen far short of meeting her burden. Application of the *Buckles* factors tips decidedly in favor of denying Defendant's request to withdraw her guilty plea.

Turning first to whether the Defendant had close assistance of counsel, Defendant had not one but the benefit of two attorneys representing her in this case until her recent change to a third attorney. Assistant Federal Defender, Darren Johnson, represented the Defendant for approximately ten months. The Defendant then retained private counsel, Stephen Bernstein on January 17, 2018. Mr. Bernstein represented the Defendant for the next fourteen months. During this time

frame Mr. Bernstein says he met with the Defendant multiple times, examined all the government's documentary evidence and met extensively with the IRS case agent. Mr. Bernstein further testified that he met with the Defendant, not once but several times, regarding the statement of facts that was signed as part of the guilty plea.

Defendant's testimony did not call these facts into dispute. In her testimony Defendant never complained that Mr. Bernstein failed to investigate the government's claims or that Mr. Bernstein failed to meet with her on multiple occasions. Rather the only shortcoming of Mr. Bernstein that Defendant referred to in her testimony was her assertion that Mr. Bernstein told her to say "yes" to the Court's questions at the change of plea hearing.  And most notably, Defendant never testified that Mr. Bernstein told her she could withdraw her guilty plea at any time prior to sentencing.

The transcript of the change of plea colloquy evidences that Defendant had close assistance of counsel prior to her entry of the guilty plea. As to the effect of the sentencing guidelines the Court specifically inquired as to whether Defendant had consulted with Mr. Bernstein:

> The Court:  [a]nd have you and Mr. Bernstein talked about how the sentencing guidelines might be applied to your case"
>
> The Defendant:   Yes, sir.

ECF No. 93-1, p. 13.

Before the change of plea hearing concluded the Court questioned the Defendant concerning whether she indeed had the effective assistance of counsel. The Court asked:

> The Court: Now, lastly, Ms. Sheppard-Lewis, you've been represented throughout this case by Mr. Bernstein. Are you satisfied with your lawyer and the way he's represented you so far?
>
> The Defendant:   Yes, sir.
>
> The Court: And have you had enough time to discuss your case fully with Mr. Bernstein and tell Mr. Bernstein everything you know about your case?
>
> The Defendant:   Yes, sir.

Thus, the transcript fully evidences that Defendant acknowledged under oath she had indeed met with her attorney, was fully satisfied with his representation and that she had a full and fair opportunity to discuss everything she knew about the case with her counsel. Mr. Bernstein also under oath confirmed that he met with the Defendant on multiple occasions and fully discussed with her the evidence supporting the government's case and the facts the government intended to prove if the case went to trial. The record therefore fully supports the conclusion that the Defendant had assistance of counsel throughout the case and particularly before the change of plea hearing.

Turning to whether the plea was knowing and voluntary, the

Defendant suggests it was not because she says she did not read the

statement of facts before she signed the document. Although Mr. Bernstein

testified that Defendant was given the statement of facts to read and

appeared to read it, it makes no difference to the outcome of her motion

whether she read every word of the factual statement. The reason it makes

no difference is because the Court never asked Defendant whether she

read the statement of facts. Rather, consistent with the Court's practice the

government read aloud the entire statement of facts verbatim into the

record at the hearing. After the government read verbatim the facts from

the statement of facts the Court asked the Defendant:

> The Court:  Okay. Thank you  Mr. Williams. Now, Ms. Sheppard-
> Lewis, you just heard in detail what the government says that you did.
> So let me ask you directly, is that indeed what you did in this case.
>
> The Defendant:   Yes, sir.
>
>        *   *       *       *       *       *
>
> The Court:  Okay. And do you have any disagreement with what the
> government says happened?
>
> The Defendant:   No, sir.

ECF No. 93-1, p. 26. The Court then went further and specifically asked the

Defendant about the facts that supported each of the elements of the

charges in count one through six. After asking the Defendant whether she

12

committed each of the facts which supported the elements of each of the

charges in counts one through six the Defendant admitted under oath that

she committed those acts. ECF No. 93-1 pp. 26-28.

To further assure the Court that the Defendant was pleading guilty

knowingly and voluntarily, the Court asked the Defendant directly:

The Court:  [N]ow Ms. Sheppard-Lewis, your guilty plea that you are
making here this afternoon, is it being made freely and voluntarily?

The Defendant:   Yes, sir.

ECF No. 93-1, p. 28.

Defendant was also expressly advised during the extensive plea

colloquy that the entry of her plea was final and she could not change her

mind after the fact if she did not like the outcome at sentencing. ECF No.

93-1, p. 14, lines 16-22.

The Court later in the plea colloquy went on to confirm with counsel

that there were no agreements between the government and the Defendant

concerning how Defendant's case would be handled or what sentence she

would receive, other than the agreement between the government and the

Defendant to continue the sentencing until after the Eleventh Circuit issued

its decision in *Munksgard*. ECF No. 93-1, pp. 29-37.

To insure that the Defendant understood the effect of her guilty plea,

and to further insure that the Defendant did not have a change of heart

after having heard all of the Court's advice concerning the effect of a guilty

plea, the following exchange took place:

> The Court: And do you fully understand all the rights and procedures that you waive and give up by pleading guilty?
>
> The Defendant:   Yes, sir.
>
> The Court: And have you indeed told the truth to the Court this afternoon?
>
> The Defendant:   Yes, sir.
>
> The Court: Now, Ms. Sheppard-Lewis, having heard everything that I've said and everything I've advised you of, is it your final desire to plead guilty to the charges in Counts 1 through 6 of the superseding indictment?
>
> The Defendant:   Yes, sir.

ECF No. 93-1, pp 37-38.

Statements like these, made under oath during a plea colloquy

receive a strong presumption of truthfulness. *United States v. Medlock,* 12

F. 3d 185, 187 (11th Cir. 1994). Consequently, a defendant bears a heavy

burden to show that her statements made under oath were false. *United*

*States v. Rogers,* 848 F. 2d 166, 168 (11th Cir. 1988). Defendant has not

come close to meeting her burden. Other than testifying that she lied to the

Court because her attorney told her to say "yes," Defendant did not provide

any details explaining what was untrue when she testified at the change of

plea hearing. Indeed, during her cross examination, Defendant conceded that the facts to which she admitted during the change of plea were true.

Based upon the transcript of the change of plea hearing, the lack of any detail in Defendant's testimony during the evidentiary hearing and taking into account that Defendant's testimony at the evidentiary hearing lacked any indicia of credibility, the Court has no trouble concluding that the Defendant understood what she was doing when she entered a guilty plea and that she did so knowingly and voluntarily.

The Court cannot ignore the timing of Defendant's attempt to withdraw her plea. This case has been ongoing for two years. There have been no less than twelve continuances, all of which were prompted by the Defendant. Notably, Defendant's guilty plea was accepted in September 2018, more than five and a half months before Defendant filed the motion to withdraw guilty plea. Between September 5, 2018 and February 25, 2019, Defendant offered no challenge to her guilty plea or any inkling that she did not fully appreciate the guilty plea should had entered. Tellingly, the motion to withdraw guilty plea was filed on the date Defendant was set for sentencing and only a few weeks after the Eleventh Circuit decided *Munksgard* and Defendant realized *Munksgard* would not provide her with any assistance at sentencing.

This chronology of events underscores that Defendant's attempt to withdraw her plea has everything to do with "buyer's remorse" and very little to do with whether Defendant entered a guilty plea knowingly and voluntarily. Thus, the timing of Defendant's motion to withdraw her guilty plea does not evidence that the Defendant has a fair and just reason for attempting to withdraw her plea. *See, United States v. Chicago,* 711 Fed. Appx. 512, 517 (11th Cir. 2017). Additionally, as a result of the lengthy delays in this case, prompted by the Defendant, and long after the case has been removed from the docket and a final presentence report prepared, allowing Defendant to withdraw her guilty plea would not conserve judicial resources, one of the factors the Court may consider in determining whether to permit a defendant to withdraw her guilty plea.

Last, and independent of the pending motion, if the Court was to accept Defendant's attempt to withdraw her guilty plea by simply telling the Court she lied at the change of plea hearing, nearly every guilty plea this Court has ever taken could be set aside, thus relegating sworn testimony in federal court proceedings to nothing more than idle promises instead of solemn and binding affirmations.

In sum taking into account all of the circumstances surrounding the guilty plea in this case, and the testimony offered at the evidentiary hearing,

Defendant has failed to meet her heavy burden of establishing that there is

a fair and just reason for attempting to withdraw her guilty plea.

Defendant's motion to withdraw guilty plea therefore is due to be denied.

The Court should proceed with sentencing currently scheduled for April 29,

2019, at 4:00 PM.

## CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that

Defendant Belinda Sheppard-Lewis's Motion to Withdraw Guilty Plea

Pursuant to Federal Rules of Criminal Procedure, Rule 11(d)(2)(B),  ECF

No. 88, should be **DENIED**.

**IN CHAMBERS** this 5th day of April 2019.

_s/Gary R. Jones_
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.